Fidelity and Deposit Company against Edward Gillen Company is on for argument next. Mr. Reardon. Good morning, Your Honors. My name is Cornelius Reardon. I represent Fidelity and Deposit Company of Maryland, which we refer to as F&D. F&D for short. This case comes before the court on the district court's decision in order granting summary judgment in favor of Gillen and denying F&D's cross motion for summary judgment. And the issue before the district court was F&D's claim in count four of its fourth amended complaint that it should be granted relief under a common law doctrine known as quia timid. And that doctrine provides that a surety can receive collateral from its bond principal if it shows that the debt is due, that the principal refuses to pay the debt, and then when it comes due, the surety will have to pay the debt. Mr. Reardon, is there evidence that your client will not be repaid? I can't. I will say this, Judge. I don't think there is evidence that when the time comes, my client will not be repaid. I think that's something we would have to look at at the time if it comes to it that our client would actually have to make good on its bond promises. But if you're suggesting is there evidence today that if the bond obligation was honored today, is there evidence we would not be repaid? The evidence in the record was that in 2011, Gillen reported in its tax returns that it had a negative net worth, I believe around $10 million, and that about six months later, it had sold some of its assets. Gillen is actively defending cases in Cook County today, which would suggest that it has some element of solvency. If it didn't have assets to defend, it would mostly not be paying lawyers, you would think. That's what I would think so too, Judge. And I can tell you that Gillen's lawyer in Cook County has been extremely active in defending those cases. So that in this case, however, the district judge went beyond those three elements I talked about and added a fourth element. And that is, if Gillen is insolvent, then why should I even consider entering a remedy in this case? And so he went beyond the curtain, so to speak, and looked behind the curtain. Once a judgment is entered, will Gillen be able to pay it? Well, I submit that that is not an element of quia timid, and it has never been in any case that I'm aware of, where a court has said we have to look behind the curtain and look at the defendant's insolvency to determine whether quia timid is indiscipline. If you've written a bond to Apple Inc., and you then file a quia timid suit against Apple saying, well, we've written this bond, they're being sued, therefore they have to post security to cover that amount. Is that a proper use of quia timid? I believe it is, Your Honor, because part of- So you don't have to show even the tiniest amount of uncertainty about whether the client will put up the money? Apple has about $200 billion in cash reserves right now. Well, look at, but if we can show, insolvency is one factor to consider. But if you look at the record in this case, let's put insolvency aside. You can't put it aside. Just for the sake- You- Go ahead, Judge. There's a certain problem in this doctrine, because as it's stated, on the one hand, you have to show that the bonding company is at risk of nonpayment. That wouldn't be true for Apple. But if it's at so much risk of nonpayment that the client is, let's say, bankrupt and has already had its assets distributed, there's also no point to the remedy. How does one decide where in the middle, some risk but still some assets, that this remedy is permissible under the law? Well, Judge, if the defendant's solvency is a factor to be considered, then I believe that that would have to be a factual inquiry at the district court level. There would have to be evidence one way or the other determining, is this factor satisfied? In this case, we have additional evidence, however. We have two instances where Gillen did not satisfy its bond obligations, and we were required to do so. We paid a claim under the Norfolk Southern Bond, and this is all set forth in the Fourth Amendment complaint. We paid a claim on the Norfolk Southern Bond in 2010, I believe, and it was not paid until the settlement in 2017, even though Gillen's attorney was holding that money in his trust account. Two, we have the supersedious bond case, the Miney case that's referred to, where Gillen entered into a settlement agreement with the Miney Company. F&D allowed a supersedious bond that it had posted for an appeal to this court to stand as security for that settlement agreement. When it came time for Gillen to pay that obligation, Gillen did not do so. We have two instances where Gillen has refused to pay bonded obligations, and we had to do it. That, in and of itself, would satisfy the third element, that is, that F&D would have to pay the debt when it became due. Therefore, we believe that the district court erred when it considered the solvency of the defendant as an element or even as a defense to the case. In the briefs, there was a discussion about which law should apply, and we submit that Illinois law should apply in this case. There are various factors that Wisconsin applies. This is a diversity case, and the district court sitting in diversity would apply the law of the state where it sits, including its choice of law rules. There are five factors that are set forth in our appeal brief, and in substance, Illinois is more concerned about the outcome of the Cook County actions than Wisconsin. Wisconsin's only contact is the fact that Gillen is a corporation that does business there and was organized there. But Gillen did on a job in Cook County over here. It was the harbor at 31st Street near McCormick Place. It was an Illinois public owner, Illinois public funding. The bond was issued under the Illinois Public Construction Bond Act, which I submit embodies a policy by the General Assembly of Illinois that it wants to have subcontractors and suppliers paid on public jobs. The joint venture that Gillen entered into was formed in Illinois. So Illinois has a great deal of interest in the outcome of that case, whereas Wisconsin has virtually none. There was also a discussion about the standard of review, and the standard of review we submit is de novo. This comes up on summary judgment, and as the court knows, that summary judgment is granted where there is no dispute of genuine material fact and is the defendant entitled to a judgment as a matter of law. Here the district court made no fact finding, although Gillen suggests that it did, and therefore is urging a clearly erroneous standard. And then it also argues that maybe the district court was weighing equities when it made its decision, which it did not. It made its decision purely as a matter of law, based on its misapprehension of the doctrine of quia timid. Was there a contractual right to demand collateral? Yes, there was, Your Honor. If you read the Fourth Amendment complaint, there are four counts, or four of the five counts were based on a written agreement of indemnity and a related net worth retention agreement. The written agreement of indemnity and net worth retention agreement were obtained by F&D as additional security over and above its common law rights of quia timid, reimbursement, and exoneration. The agreement was signed by Gillen only, not by F&D, and there's no language in that agreement which suggests or states that it abrogates or negates any of the surety's existing common law rights. Judges, the cases cited in our brief suggest that other courts have considered quia timid even where the insolvency of the defendant was acknowledged, and yet quia timid was still awarded to the surety. And with that, I will reserve the balance of my time, if it's all right with the court, for reply. Thank you, Your Honor. Counsel? Mr. Pollard. Thank you. May it please the court, Scott Hallowen for Edward E. Gillen Company. This is an action that is a, the title of it is called a request for a decree of quia timid. It's a common law request, and the most important thing to remember is that this common law request is being made after a settlement in which all contractual rights under the bond, the agreement of indemnity, and under the net worth retention agreement were fully released. Well, right, that was the point of my question, that there was a contractual right to demand collateralization, and that's been given away, settled. It's gone. Not just that, yes. The collateralization right, trust fund rights, express right of indemnity, right to file UCCs, right to secure liens against property, and rights to secure liens by any other available means. All of those were in the documents. They've all been released. So that all that is left is this request for a decree of quia timid. What is that? Both sides refer to the Borey case, and the Borey case calls quia timid not a right of action, but a quote unquote procedural device. It's a form of preliminary injunction that is available to preserve the status quo. And regardless of what law you apply, the cases that have been cited from Illinois in support of this proposition, the Clare case and the Hanover case, both are preliminary injunction cases that are based upon a trial later of agreements of indemnity. In fact, the Hanover case has a very similar agreement of indemnity to the one that was at issue here where the rights were released. So both in Clare and in Hanover, what was being sought was protection, preservation of the status quo, so that the district court could later then determine the issue of whether or not there should be some collateralization, trust fund, indemnity, UCC rights for security rights, all things that are released here. And therein lies the rub of the problem with F&D's arguments here. If they're seeking this procedural device, a form of preliminary injunction, what is it ultimately preserving the status quo for when all of the actual contractual rights have been bartered away as part of the settlement and no longer exist? Now this is also important in the state of Wisconsin and Illinois, which share the same law on point, that if there is a contractual remedy, equitable remedies are superseded. There is case law that is almost mirror image in both states. This presents almost the mirror image reversal of that question, because the contractual remedies have been specifically negotiated away in return for a payment, and then all of a sudden they're trying to assert that as a legal right that now blossoms under the form of equity after the contractual rights, which would have otherwise barred it, have been negotiated away. And that's also what is the primary request that's being made here. I think that there's ample reason here for the appellate court to affirm the district court's decision. One, there's a lot of back and forth on what is the appropriate standard of review here. I think that the court need go no further than the Borey case. The Borey case very clearly states that anything involving quia temet is, quote, it should be entitled, the remedy is drastic, although we will not disturb a district court's decision to grant an injunction unless it is an abuse of discretion. That's what the Borey court indicated. In the Borey court, the same argument about the errant application of law to a body of facts was applied, as you just heard here and as you heard in the reply brief that was filed by F&D. Borey cites to the Stormy Kline decision, which decided that very issue, that said it is still an abuse of discretion standard even if there is an argument that there is a problem. The problem that I have with the district court's discretion, as you describe it, is that the district court said, well, the complaint for quia temet alleges that the bonding company is uncertain about whether the client will perform. And since it alleges that the client may not perform, it loses, because obviously they wouldn't be worrying unless Gillen lacked assets. But if Gillen lacked assets, what's the point? That rationale makes the doctrine of quia temet go, right, it entirely goes away, because whenever the bonding company is uncertain or unsure, or there's doubt about the client's ability to pay, the judge will just say, nope, not doing anything, right, nothing to see here, move along. That can't be what the doctrine does. It's not self-destructive, is it? No, I don't think so at all, and I don't think that's what the district court was intending to apply. I think it's a very fact-specific argument. Everything in the appeal is targeted towards that second-to-last paragraph of the district court's decision. Well, as soon as you say very fact-specific, there hasn't been a trial in this case. No, wrong word. Yeah, wrong word, because as soon as you say that, you lose immediately. Yeah, that's correct. Absolutely correct. What the district court was dealing with was a situation where a case had been pending for seven years. The district court had seen the situation where Edward E. Gillen Company had sold its assets to liquidate a variety of debts. There were five amended complaints that started with 29 bond claims. It had seen, one by one, the resolution of bond claims down to the remaining five bond claims. The statement was made by opposing counsel about the Latin School case and the Norfolk and Southern case, but what he failed to mention was that in the Latin School case, those funds, as soon as that was a recovery, by the way. Gillen was right in the end on that bond claim. They recovered, and they deposited the funds immediately in the court with Norfolk and Southern. They also had deposited funds in that case in a lawyer trust account. So the district court had seen, over the course of a seven-year period, Edward E. Gillen working through a large series of bond claims, all involving substantially the same general contractor, the Passion Company, and it saw that it was making progress towards the resolution of those claims. The court was also presented with information that Edward E. Gillen Company was actually doing better than it had been before. I don't see any of this as the district court's rationale. The district court said, fidelity and deposit says we're uncertain. That must mean that Gillen has no assets. Since Gillen has no assets, it's pointless to require it to post any F&D loses, right? There weren't any findings of fact about what is going on. It was, as I read it, simply that this particular common law claim is internally incoherent, and anybody who asserts it loses off the bat. I don't think that that's what the district court's intention was, but I do think that you could read it that way. I think what the sentence that is at the very second-to-last sentence of the decision, where the only real finding is made, F&D does not point. You can't make findings of fact at this stage of a case, can you? Well, it is a preliminary injunction. Was there a hearing? No, there was not a hearing. It was submitted behind the briefs. Findings of fact, you receive evidence, you have a hearing. That I understand. In essence, what I think the district court is doing is saying this case has no remaining claim, and that the argument that is being made with respect to whether or not Gillen's insolvent has an internal inconsistency, but that the court is looking at the totality of all of the evidence, and this case has a truly massive record that was submitted not only within the briefing here, but also in the assembly judgment proceedings that were incorporated by reference, and indicating, I don't see it. I don't see a basis for preliminary relief. And I think that that was within the discretion of the court. And I think it all comes down to what is the standard of review? If you look at what Borey said as it relates to the application of the law to the facts in a preliminary injunction context for quiatement, the appellate court's decision is whether or not the district court's decision was within the range of decision-making authority a reviewing court deems acceptable for a given state of facts. But a mistake of law is always an abuse of discretion. And if the district court misunderstood the legal standard and imposed this sort of catch-22, insolvent you lose, solvent you lose. I mean, that's... It is correct that a mistake of law, even under the abuse of process standard, is always a basis. And you are correct. Right. So we're in somewhat uncharted territory here because of the obscurity of this remedy and also this confusing language in the settlement agreement, which purports to reserve this obscure claim when settling the claim for the same relief under the contract and then releasing everything. Just going down to the nuts and bolts, I think that what the request is being made by F&E is a really dangerous precedent because normally with a bond there is an indemnity agreement, there's UCC rights, security rights, there's liens, there's things that people can see. Here, all of that has been released. But F&E is yet saying that it holds some sort of a magic ball, some sort of a magic right that doesn't get recorded by UCC that gives it priority rights into assets of someone like Gillen. That's something that banks don't know about, creditors don't know about, and that's the problem with quiatement. It dates back to 1823. It dates back to an era when there weren't those types of security terms. That's hardly an old doctrine. Excuse me? It's hardly an old doctrine. Anything more recent than the 16th century is a brand new doctrine. If it wasn't in the yearbooks. I think ultimately, when it comes down to it,  and it comes down to Restatement Third Assertionship and Guarantee, Section 21, Comment L, that's the Boree position, and that indicates that the relief should be considered as a present remedy for a current breach of the duty to refrain from conduct impairing the secondary obligor's expectation. That's what the actual test is. Can there be a reasonable fear in this situation when the Circuit Court of Cook County is holding twice as much money in contract funds to pay the underlying obligations? I don't see how there could be, to be honest. I don't think there could be, given the amount of assets, that Gillen has on top of that. The court is holding $4.9 million in contract funds, and the claims are worth $2.3? The court did recently adjust the downward of the funds because of some resolution of some claims. But, yes, the court is holding substantial funds. Right, so that suggests security for payment of the claims. Yes, I would agree. These are lien claims, right? Yes. These are all lien claims. And, again, Restatement 21 says it's a current breach. That's what it's called for. It doesn't say fear. The doctrine, the Latin doctrine, is fear. But the Restatement Second of Guarantee, Comment L, which is one of the few things actually recognized in the state of Wisconsin where the word surety actually appears in the same case, recognizes this doctrine, and it requires a current breach. There is no evidence of a current breach here. There's no evidence of anything that satisfies what would otherwise be considered a current breach. And that's why, under the circumstances, I think Judge Edelman's decision should be affirmed. Mr. Allen, you mentioned that recently the court holding it decreased. Is it decreased below $2.3? Yes. I don't know the present amount. I do believe no, it is above $2.3. The dollar amount that is currently being held is the face amount of the five lien claims that are presently remaining that were identified in the reply brief that was submitted by F&D, which was at the time of the reduction. Thank you, counsel. Anything further, Mr. Reardon? I'd like to address your Honor's concern about the amount on deposit. Those deposited funds were made under what's called Section 23 of the Illinois Mechanics Lien Law. And the Mechanics Lien Law requires that a public owner withhold funds as security for a lien claim. That security is not held to secure any bond claims. And indeed, the statute specifically mandates that if a lien claim is determined to be invalid, those funds must be paid to the general contractor, that the public owner has no discretion in that regard. It's not paid to the surety to satisfy a surety's obligation. Therefore, the fact that the Cook County Circuit Court clerk is holding those funds does not give F&D any comfort or security against losses of its bond claim. So I think that it... But will there be a claim against the bond if the liens are paid? There could be, if the liens are paid, actually in fact paid. There could be, depending on what the amount of the payment is. If it's a partial settlement, I don't know. But if they're fully paid and they equal the amount of the bond claims, then in that case I believe... I don't know what the plaintiffs would do, but I would assume in most cases they would dismiss their bond and contract claims since they've already received what they were seeking. So... I have a question about the basic common law doctrine. Do the states that recognize this doctrine permit kiatima to be used when there is also a contractual right to security? I believe they do, Judge. In what Mr. Hallowen... What cases would you cite for that proposition? I would cite, at least the ones that I'm aware of, are the cases cited in the briefs, the Clare decision and the Hanover decision for two. And the cases that Mr. Hallowen refers to are cases in which you have a written contract and there's also a claim for unjust enrichment or they're seeking quasi-contract relief in equity, and the courts say if there's a written contract, those are not available. There has never been a decision that I am aware of where a court has held because a surety has an indemnity agreement, its common law rights have now been forfeited. And in fact, if you review the collateral deposit provisions of the indemnity agreement, which I believe it's attached as Exhibit 1 to the Fourth Amended Complaint, those rights are more limited than the right of kiatima based upon the establishment of a claim reserve, and we could not seek more under contract than what a claim reserve was established for, whereas kiatima does not have that limitation. Thus, we chose the road of kiatima as part and parcel of all this settlement. The settlement did specifically exclude this claim and also Gillen's defenses. Therefore, it's disingenuous for Gillen to suggest that somehow this claim also went away with that settlement. Well, the settlement agreement did preserve Gillen's right to argue that this equitable remedy has been waived. Yes, it did, Judge. I agree with that. So it's either all in or all out by the settlement. Right. Thank you, Your Honor. The case is taken under advisement.